Good morning. May it please the court, my name is Daniel Kaplan. I represent the appellant Juan Munoz. I'm going to be watching the clock and attempt to save two minutes of my time for rebuttal. On the afternoon of April 20, 2010, Mr. Munoz's counsel approached the prosecutors just after a pretrial conference. At that point, the government had placed a written offer on the table, which included a stipulation to a ten-year sentence. And the offer was conditioned, the acceptance had to be by a signed writing on that day, April 20. Mr. Munoz's counsel approached the government and made a counteroffer, which was to take that deal, adding one additional term wherein the government would promise not to charge Mr. Munoz with certain as yet uncharged conduct. The government accepted the counteroffer, saying in the prosecutor's words, we said sure. There was no dispute over that. In reliance on that agreement entered into on April 20, Mr. Munoz declined to put his signature on the government's written offer, that one day only offer, on that one day that it remained open. Unfortunately, Mr. Munoz's reliance on the agreement the government entered into with him on April 20, 2010, turned out to be hazardous to Mr. Munoz's liberty. Because as a consequence of his not signing that one day only offer, the very next day, the government emailed Mr. Munoz's counsel and said, we have no deal. They only offered him less favorable deals than either that written offer or the counteroffer that was accepted. And the negotiations broke down, as a consequence of which Mr. Munoz went to trial, was convicted, and ended up with a sentence half again as long as the one he was going to stipulate to, a 15-year sentence. So if we agree with you, what's the remedy? The remedy, I think the closest analogy is the Fagan case. The remedy is to vacate the sentence. I believe the conviction also should be vacated, although in Fagan they didn't specify the conviction was vacated. But vacate the sentence, remand the case so that the Court, Mr. Munoz may be placed in the position he would have been in had the government not breached. In other words, the agreement that was reached after the April 20 pre-trial conference, the government should be held to that agreement, and that agreement should be put before the district judge. Who can accept it or reject it. Who may accept it or reject it. You refer to them as separate agreements, but are they really that? It seems to me that there was just a term being negotiated within an agreement. If that's so, even though the government accepts, you have the attorney had the responsibility of making sure the contract got amended and it was still signed within the day, doesn't it? Wouldn't that be true on a regular contract? Well, the first thing I would say to that is there was a material difference being agreed to. There was going to be a promise by the government not to charge Mr. Munoz with certain uncharged conduct. It didn't do anything at all to the contract they had. It didn't what? It didn't do anything at all to the contract they had. It was really another term not dealing with the nature of the contract. They were not – there was nothing in the contract that said they were or weren't going to do – go after him for this other charge. It didn't change anything as far as the contract is concerned. It was really separate. So I – just in contract terms, I'm having difficulty. I'm concerned, of course, about what happened. But in contract terms, which we have to follow, I'm having difficulty seeing where something that is completely separate from the contract is going to hold this up when the lawyer didn't get the contract amended, knowing it had to be done during the 1 day. Let me start by taking your premise. And I disagree with the premise, but let me take it for a moment. If, in fact, this was not a material change to the agreement and did not change the nature of the contract, in that circumstance, the government, by agreeing to make that amendment under the circumstances in which they agreed, effectively waived their insistence on 1 day signing. You said the government agreed to make the change. Was there anything in the discussion as to who was going to be – take the responsibility of amending the agreement? There's nothing in the record that indicates specifically we're going to make this change. However, the record makes it plain that the government would make that change. The government already had drafted an entire agreement and emailed it to Mr. Munoz's counsel that day in a PDF format. It was the afternoon. It was the end of the day. Mr. Munoz was going to be – he was already in detention. He was in custody. He was going back to the prison. The parties were going their respective ways. There was a change of plea hearing set for 2 days later. The circumstances made it clear that the government was the one that was going to be doing the redrafting and putting that language in. In fact, the government did say that later at the change of plea hearing, they themselves made changes to a proposed agreement, which eventually was not accepted. So if I take your premise that there wasn't a material – there was not a material change to that contract, then it's a situation of waiver. The government clearly – the government made it very clear it had to be signed that day during the pretrial hearing. But then right after that, they said they would make a change under the circumstances where it was perfectly clear that change was not going to be redrafted and signed on that day under those circumstances. Well, you will – excuse me. The government is going to come back and ask you, well, the judge hadn't approved it, so there's no contract. Correct. And the cases seem to say that. How do you distinguish them? All those cases, or a number of those cases, including money from this Court, say that is the general rule, but there is an established exception where there's detrimental reliance, where the defendant relies to his detriment on an agreement. And you want us to hold that going to trial is detrimental reliance. Is that right? He elected to go to trial. He didn't have to go to trial. He could have pleaded guilty. He could have pleaded guilty, but he wasn't interested in the deals the government was offering after they said that that deal was off. Well, that was his decision, but you want us to hold that his deciding not to accept that and go to trial is detrimental reliance. Because of the – the consequence was 15 years of custody instead of 10 years. Five more years in prison was the consequence of being placed in that position by the government's brief. Okay. So he makes a decision not to go with a deal he could have gone, go to trial, get 15 years, and then come back and ask for another shot at it, isn't that what you're asking? Exactly. The same is in the Fagan case where that relief was granted. The same is in, very closely analogous, the case of Partita Para where that relief was granted. In those cases, the defendant could have opted to go to – could have opted to plead straight up or take a lesser – a less favorable deal. But still, the breach was the breach. The defendant had the entitlement to the benefit of the deal that was negotiated with the government. You know, there are a lot of different contract theories that one can look at. I mean, one is that it's a counteroffer that you accepted – that the government accepted. I'm sorry. But the district court eventually adopted the notion there was no agreement. How are we to review that on appeal? Do you think it's a de novo review or is it a factual finding to which we owe a lot of deference? It's a de novo review. The parties are in agreement on that. The Fagan case says whether a plea agreement needs to be enforced or should be specifically enforced is a de novo question of law. And I will reserve the balance of my time with the Court's permission. All right. Very good. Good morning. Joan Rufinock, District of Arizona, appearing on behalf of the United States. Could you speak up a little bit, please? Certainly. Or move the mic even better, closer. There you go. Is that better? Yes. Okay. Defendant is not entitled to specific performance in this case because the plea agreement was never accepted by the district court. In the two cases on which defendant relies, both Partita Para and the Fagan case, there was an actual plea agreement that was accepted by the district court. In Partita Para, it was a misdemeanor plea. And in that case, the government claimed mistake of fact. The district court allowed the government to get out of the plea agreement, and this court said, no, there was detrimental reliance because the defendant went forward and pled guilty with the understanding that that was going to be the agreement, which makes sense. In this case, we don't have that. We had a one-day agreement. Right. But I think there are well-known exceptions on detrimental reliance, and whether they've established that's another question. But I just don't understand the government's position, and maybe you can enlighten me about what actually happened there. They had a deal. I mean, everybody concedes there was a deal. And then the next day it was gone. I mean, what to – I don't understand the government's position, and maybe you can help me. Sometimes it helps to peek behind the curtain, although I don't want you to go outside the record. What is on the record is that there were four living defendants in this case. Three of them took pleas. The fourth, Mr. Munoz, went to trial. So it was going to be a trial of a single individual. There was a one-day only deal offered with a plea to the 10-year mandatory minimum, which was very unusual. And as the district court recognized at the April 20th status conference, the court made the comment that the court doesn't usually allow those kind of pleas, but it didn't have the opportunity to see the pre-sentence report, so it couldn't make a judgment as to whether or not that would be a plea that it would accept. And so the government offered the one-day only. And certainly if the defendant had wanted to accept that plea – and let me back up one minute because at page three of that same transcript, Mr. Williams, the defense attorney, said, I believe it's acceptable at this time, meaning the plea that was being offered for that one day. I believe it's acceptable. This defendant waffled. He waffled before. He waffled after. So to say that there was an agreement that has to be enforced – No, no. But I don't think there's any doubt that there was – the defense counsel came back and said, okay, we have a deal. If you have this one modification, the government said yes. And then – And had – I'm sorry. Well, no. And then there were – you know, you've read the arguments. So the PDF format, they couldn't get it back and so forth. And then the defense counsel was surprised the next day. And Judge Martone struck me as being very surprised at the government's behavior in this case. He said, I don't understand why you'd want to go through a four-day trial and the government conceded it had no prejudice. So can you enlighten me why that after you had a deal you would then the next day say it's all off? What happened? You had line assistants who had authority to offer the plea agreement for that day only. And as it could have been signed on that day. There's a number of cases that have gone through where there are pen and ink changes to a plea agreement. And certainly had the defendant, in fact, wanted to sign on that day, he could have signed and just written in the additional term that he wanted to put into it. Well, do you think he felt like he needed to when the USA said, in effect, we've got a deal? I think, yes, because it was plainly put on the record, this is a one-day deal. The prosecutor stopped the proceeding and said to the court, I want the court to understand, this is a one-day deal. It has to be signed today. And as I say, I mean, it would have been simple enough if the defendant, in fact, wanted to sign the plea agreement. They made a counteroffer. And then government accepted it. I don't know if I were sitting in defense counsel's shoes where there would have been plain to me that I needed to get something out that day if the government didn't say at that point, but we still need it signed today. We always encourage and we have, as you know, in this circuit, we get the federal defenders and the prosecutors together and we talk about fair play and how we can avoid misunderstandings. And this seems to be one of those cases that it's hard to understand the government's point of view the next morning. So I'm not quarreling with you. I'm just struggling to understand. And what I can tell the court is that stipulations to the bottom of the – to the mandatory minimum when the guidelines are significantly higher as they were in this case. I mean, they were 188 to 252 months. So a stipulation to 120 months was a significant benefit. The government doesn't lightly give those kind of plea agreements. That's why the supervisors in this case authorized it as a one-day deal. No, I get that. I mean, I get that entirely. But then if it's not clear to defense counsel that the modification change – I mean, if there had been no modification, I understand your argument perfectly. But with the acceptance of the modification, it's hard to see how that could have probably been accomplished that day. And why – what changed between that day and the next? I have to say that on the 26th when the parties were – when the parties appeared, the government's position was we made a one-day deal and that it wasn't accepted. So I think there were things that occurred off the record that we don't have the benefit of. And so all I can tell you is what's on the record. And the government at the motion to enforce the plea agreement said our understanding was one-day deal. He didn't sign it. There were additional negotiations after that with regard to reinstating some previous plea agreements. I gather you were not the AUSA who said we, in effect, we have a deal? I was not, Your Honor. But I would submit to the Court further that the remedy that's being sought in this case doesn't make sense. And that is because – Why not? Because there's no guarantee that the defendant is going to accept any plea agreement. He's never gone through a plea colloquy. In the other cases that you've had before you, the case law, there's been an actual plea colloquy that the defendant has gone through, entered the plea, and it's been accepted. No, but the difference in that is – the difference in remedy is that all he is asking is to be put in the position he was that evening where you have a deal and you present it to the court. And then you go through the colloquy after that, and the court doesn't have to accept it. That's my understanding of the remedy they're proposing. And then he'd have to have another trial if he didn't accept it, which there's already been. Yeah. Or he gets the sentence. But it's up to the court to accept it or reject it at that point. I would submit that there's been no case presented where there hasn't been – where there's been true detrimental reliance, where there's been cooperation, where there's been information provided. We do have analogs in the ineffective assistance of counsel cases where a plea agreement wasn't transmitted to the defendant. And we put the defendant back in that position, which seems to me is even more one step removed from what you're saying. In other words, we're saying, you know, those cases, if the defendant doesn't have the opportunity to accept the plea, we put the defendant back in the position of where he was at the time. And so it seems to me, although I agree with you, we don't have a precise remedy in this context. In case it says that, they're pretty close in the analogous cases. Well, I'd submit, though, that there's not the detrimental reliance, again, because you have a waffling defendant. He had the previous offers. He had the one-day offer here. And then he was going to take the subsequent offer of providing cooperation and getting the mandatory minimum to mid-guideline range and rejected that and therefore didn't go forward with the plea proceeding. And in light of those facts, you don't know what the defendant would have done, that his own counsel wasn't sure what the defendant was going to do. And so to say that now that I've seen my sentence, I got significantly more than I would have gotten had I taken the plea deal, now, oh, yeah, I would have accepted that plea agreement, but for the fact I couldn't sign it that night. Yeah, we don't know, though. We don't know, but certainly, I mean, there were pens available in court. There's been countless plea agreements that have been pen and ink with signatures on them. And, frankly, even if we had that, I'm not sure that that would be detrimental reliance because even with the signature, this Court has said either party can withdraw from the plea agreement until it's accepted by the Court. So, frankly, even the signature on the document wouldn't necessarily be enough to establish detrimental reliance. Judge Wallace, do you have any questions? No. Okay. Thank you, counsel. The government's assertions about Partita Parra and Fagan are incorrect. In Partita Parra, the Court says that the district court accepted the plea, accepted the guilty plea. It does not say the Court accepted the plea agreement. There's a very, very crucial difference. In Fagan, it was two cases involved, and case number two was the one where the remedy was ordered. And in case number two, the district court never accepted the plea agreement. As a matter of fact, the district judge in the case number two at issue said the reason I am not going to enforce this plea agreement is that I never accepted this plea agreement. So the assertion the government led off with when it stood up here about those two cases is crucially completely false. There was a statement that the problem here was that the line assistants, the line assistant U.S. attorneys, had authority that was limited by their superiors. And that is what the record tended to suggest. The case law is quite clear that that kind of a problem, as the Court put it, this Court put it in Brown v. Pool, that may be the government's problem. It's not the defendant's problem. The Supreme Court, when it laid the groundwork for this entire category, this entire area of law in Santobelo, said that the prosecutor's office has a duty to have the right hand let the left hand know what the right hand is doing. In other words, these kind of miscommunications or bureaucratic snafus within the prosecutor's offices are not a reason to release the government from the contractual obligations it enters into in plea bargaining. As far as the issue of the remedy, of course, there is no guarantee what exactly will happen. There is no guarantee that everything is going to turn out better for Mr. Munoz if he gets the remedy to which he is entitled. But he is entitled to that remedy. The same exact thing could be said about the situation in Fagan, about the situation in Martita Parra, and any number of cases where specific performance, which has been recognized as the essential default remedy in this circumstance, is ordered. Well, I suppose. Go ahead. No, sorry. Go ahead. What is it that the ASUA said when the attorney came up to him and said that they want this added? What was the specific words that were said? Well, the specific words, the attorney for Mr. Munoz said, can we add this language? And Mr. Rae Woo said, and we said sure. That was what he stated to the Court. And we said sure. In other words, they agreed to make that amendment. Plea agreements in this district have a standard caption that says agreements about, agreements not to prosecute. Underneath that, if there's no agreements not to prosecute, it says there are none. If there's something, then they enter language in there. I'm sorry. Go ahead. What does the record show as to the written agreement at that point? Did the defendant have it? He could have signed it? It was emailed to the Defendant's Counsel. So, yes. So the Defendant's Counsel had it. And there was nothing to prevent the Defendant's Counsel from interlineating the statement, having him sign it, and having the government initial the change? There was nothing to prevent either party from doing that. So the Defendant was in a position, actually, to sign that day? He could have. And perhaps all this would have been avoided. The parties proceeded, the parties made an oral agreement to enter into a new agreement. But there was nothing said as to who was going to change it. If your client had the authority and the ability to make the change he wanted and sign the agreement and didn't do so, why is the government bound to go ahead with it? Because the government agreed to enter that deal, because the government entered into a contract. Okay. I understand that sure is good enough. But the attorney who represents the Defendant, who's trying to represent the Defendant, clearly could have made the interlineation, had him initial it and sign it. By not doing that, the basic request that it had to be done in one day was done away with. Was done away with. Well, I agree. I agree. There was an oral contract breach under circumstances in which either it was a new deal, which didn't have a same-day signing condition, or it was a waiver of the same-day signing condition. No, sure it wasn't a new contract. Sure, it was an amendment of an agreement to amend the other one. But the Defendant's attorney was in a position to carry it out at that very moment and still comply with the one-day requirement. It could have been done, but the fact that it wasn't done doesn't destroy the agreement, because the parties made an oral agreement. The fact that they can't make it. It doesn't destroy the one-day agreement. And both parties had a chance to do it. It wasn't done. And I don't know if this were an ordinary contract dealing with a Ma and Pa grocery store, I wouldn't have any difficulty with this. But why is it different from because it's a plea agreement? We've said contractual law applies to these. I don't think it is different. I think it's exactly the same. The restatement of contract says the fact that the parties contemplate putting their oral agreement into writing at a later date does not destroy the oral agreement. The oral agreement is still a contract. This was a contract. The fact that they were going to change the language with a pen or with a computer makes no difference. You make it a separate contract, but I'm suggesting to you it's an amendment that they're suggesting to this contract, which they could carry out. And if that's true, then the one-day problem isn't erased because of these discussions. Isn't that true? I didn't follow that. Could you say that again? Sure. I'm suggesting to you that either party could have made the necessary changes to the written agreement and that the one-day limit is still in existence. It isn't a separate contract. It's an effort to amend the present contract, which either party could have complied with. If the government intended to insist on their same-day signing condition at the same moment, the same afternoon, when they said, sure, we will make that change, then   And if the government intended to insist on their same-day signing condition at the same moment, the same afternoon, when they said, sure, we will make that change, then I'm suggesting to you that either party could have made the necessary changes to the written agreement and that the one-day limit is still in existence. And if the government intended to insist on their same-day signing condition at the same moment, the same afternoon, when they said, sure, we will make that change, then I'm suggesting to you that either party could have made the necessary changes to the written agreement and that the same afternoon, when they said, sure, we will
judges: Albritton, Wallace, Thomas